UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TYRONE R. JOHNSON,<br>    Plaintiff, | Case No. 1:18-cv-43 |
| vs. | Black, J.<br>Bowman, M.J. |
| MICHAEL HUMPHREY, *et al.*,<br>    Defendants. | **ORDER AND REPORT<br>AND RECOMMENDATION** |

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio, has filed a pro se civil rights complaint under 42 U.S.C. § 1983 against the following SOCF corrections officials: Michael Humphrey, Warden Ronald Erdos, Assistant Warden Larry Greene, Institutional Inspector Linnea Mahlman, Sgt. Walter Sammons, D. McCroskey, Harold Bell, Lt. Eaches, Lt. Rodgers, K-Side Unit Manager Oppy, Mailroom Supervisor Mr. Weaks, William Cool, Major Warren, Anthony Cadogan, and Cynthia Davis. (Doc.1-1, at PageID 6, 9). Plaintiff, who initially filed a motion to proceed *in forma pauperis* (Doc. 1), has since paid the filing fee.

This matter is before the Court for a s*ua sponte* review of the complaint (Doc. 1-1) to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b). The screening procedures established by § 1915 apply to complaints filed by prisoners against governmental entities, officials or employees regardless of whether the plaintiff has paid the filing fee, as in this case, or is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915A(a); *Hyland v. Clinton*, 3 F. App'x 478, 479 (6th Cir. 2001); *Bell v. Rowe*, No. 97-4417, 1999 WL 196531, at *1 (6th

Cir. Mar. 22, 1999) (citing *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997)); *see also Fleming v. United States*, 538 F. App'x 423, 426 (5th Cir. 2013) (per curiam) (citing *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998)); *Miller v. Edminsten*, 161 F. App'x 787, 788 (10th Cir. 2006); *Lewis v. Estes*, No. 00-1304, 2000 WL 1673382, at *1 (8th Cir. Nov. 8, 2000) (per curiam) (citing *McGore* and Seventh and Second Circuit Court decisions).

I. **Screening of Complaint**

　　A. **Legal Standard**

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

### B. Plaintiff's Complaint

In his complaint, plaintiff alleges fourteen claims, some duplicative, against fifteen prison officials for alleged violations of his constitutional rights during the period of March 1, 2017, through December 4, 2017. (*See* Doc. 1-1, at PageID 10-18).

In his first claim, plaintiff alleges that his right to due process was violated when, in the early morning hours of March 1, 2017, he was removed from his cell, subjected to a strip search and urinalysis testing, and placed in restrictive housing following a positive drug test.

3

(Doc. 1-1, at PageID 10-11). Plaintiff alleges that he signed paperwork and a cash-slip to send the urine sample for a "[r]e test," but was not given a receipt. (Doc. 1-1, at PageID 10). He claims that, "[a]fter nine days of being in restrictive housing," Sergeant Branson, who is not a named defendant in this action, read the conduct report to plaintiff.[1] (Doc. 1-1 at PageID 10). Branson allegedly told plaintiff that he would receive a copy of the lab results "per R.I.B. [Rules Infraction Board]." (Doc. 1-1, at PageID 10).

Plaintiff alleges that, on March 10, 2017, he was taken to the R.I.B. (Doc. 1-1, at PageID 10). He claims that he asked the hearing officer the name of the officer who wrote the conduct report and told the hearing officer that the conduct report inaccurately stated the time of the offense and the location of the urine test. (Doc. 1-1, at PageID 10). When plaintiff requested to verify the lab results and asked the hearing officer what substance was in his urine, the hearing officer allegedly stated that "no lab results w[ere] present," but that defendant Humphrey had indicated that the results were positive. (Doc. 1-1, at PageID 10). The hearing office told plaintiff to contact the Restrictive Unit Case Manager to obtain a copy of the lab results. (Doc. 1-1, at PageID 10). Given the hearing officer's alleged statement regarding the lab results not being present, plaintiff questions why the "R.I.B. disposition stated that the board relied on [the] conduct report and positive lab test" results. (Doc. 1-1, at PageID 10). Plaintiff further appears to assert that his R.I.B. appeal rights were waived without his consent. (Doc. 1-1, at PageID 11).

According to plaintiff, he has been unable to obtain a copy of the lab results, despite contacting the "case manager, Warden, Warden Assistant, [and] Unit Manager."[2] (Doc. 1-1, at

---

[1] Although plaintiff's allegations are partially illegible, it appears that the conduct report was for "making wine." (Doc. 1-1, at PageID 11).
[2] For the purposes of this Report and Recommendation, the undersigned assumes that plaintiff's reference to "Unit Manager" in Claims One and Two is a reference to defendant K-Side Unit Manager Oppy.

4

PageID 10).  Plaintiff asserts that, when he contacted defendant Humphrey "by informal complaint asking specifically the laboratory involved and [to] identify what substance was in [plaintiff's] urine," (Doc. 1-1, at PageID 11), Humphrey responded with the date of the urinalysis, the date the urine sample arrived at the laboratory, and the address of the laboratory. (Doc. 1-1, at PageID 11).  Plaintiff questions, however, whether the urine sample was sent to the laboratory because Humphrey "was not the person who gave the urine screen."  (Doc. 1-1, at PageID 11).  Plaintiff claims that defendant Greene failed to investigate this matter.  (Doc. 1-1, at PageID 10).

In his second claim, plaintiff alleges that, while he was in the "LPHU [Limited Privileges Housing Unit]," he was denied adequate access to the law library for ninety days and denied recreation privileges for sixty-days.  (Doc. 1-1, at PageID 11).  He alleges that "LPHU administrative Rules states [sic] all inmates must have 2 hours out of the cell daily."  (Doc. 1-1, at PageID 13).  Plaintiff claims that he sent a kite to the Unit Manager.  (Doc. 1-1, at PageID 11).  The Unit Manager allegedly "stated the Warden ended inmates receiving emails and Library," but did not answer plaintiff's question regarding why other LPHU inmates received recreation when he did not.  (Doc. 1-1, at PageID 11).  Plaintiff alleges that, when he asked the Unit Manager why other inmates only remained in the LPHU for 30-40 days, the Unit Manager answered that plaintiff had "multiple rule 39's."  (Doc. 1-1, at PageID 11).  Plaintiff claims, however, that the "R.I.B. disposition clearly states that this is [plaintiff's] first time drug sanction."  (Doc. 1-1, at PageID 11).

In his third claim, plaintiff alleges that defendant Mahlman "discriminates against inmates by not forwarding inmates Grievance forms" and by telling inmates that issues are not grievable.  (Doc. 1-1, at PageID 11-12).  Plaintiff claims that the "Administration" at SOCF

5

displays hostility towards African American inmates and "inmates in general." (Doc. 1-1, at PageID 11).

In his fourth claim, plaintiff restates the allegations in claim two regarding his alleged denial of adequate access to the prison law library. (*See* Doc. 1, at PageID 12). However, plaintiff adds that he informed defendant Cadogan and the Warden of the alleged denial. (Doc. 1-1, at PageID 12). Plaintiff further adds that the "SOCF Warden personally told inmates that if [they] want a library don[']t come to jail." (Doc. 1-1, at PageID 12). Plaintiff alleges that he has two open cases and that "[t]he no law library has made [him] not be able to meet a required deadline in rebuttal to the State." (Doc. 1-1, at PageID 12). He refers the Court to "Case L-17-1014." (Doc. 1-1, at PageID 12).

In his fifth claim, plaintiff alleges that "[a]s a result of being placed in LPHU," his legal mail was treated as regular inmate mail. (Doc. 1-1, at PageID 12). Plaintiff attributes a court motion being returned to him for insufficient postage to the SOCF mailroom's alleged failure to properly treat his mail as legal mail. (Doc. 1-1, at PageID 12). He further alleges that the mailroom "extracted documents out of the motion" and returned it to him thirty days later. (Doc. 1-1, at PageID 12). Plaintiff alleges that "[t]he entire administration has been conspiring to deny [him] simple rights." (Doc. 1-1, at PageID 12).

In his sixth claim, plaintiff essentially reasserts the allegations contained in his previous five claims. (*See* Doc. 1, at PageID 12-14). Plaintiff clarifies, however, that he brings his challenge to the March 1, 2017, strip search under Fourth and Eighth Amendment principles, as well as the Fourteenth Amendment due process principles asserted in claim one. (*See* Doc. 1-1, at PageID 13).

In claim seven, plaintiff alleges that, on September 17, 2017, he was placed in

segregation for a Rule 18—creating a disturbance—violation. (Doc. 1-1, at PageID 15). Although not entirely clear, it appears that plaintiff claims that defendant Eaches placed him in a segregation cell that was covered in feces and did not have a mattress. (Doc. 1-1, at PageID 15). Plaintiff further claims that Eaches threatened to kill him and take his socks and underwear. (Doc. 1-1, at PageID 15). According to plaintiff, he was kept in the cell for nine hours without a mattress. (Doc. 1-1, at PageID 15). When two corrections officers, who are not named as defendants, did bring plaintiff a mattress, it too was allegedly covered in feces. (Doc. 1-1, at PageID 15). Plaintiff claims that, in the morning, corrections officers brought him a different mattress, but refused to remove the dirty mattress. (Doc. 1-1, at PageID 15). Plaintiff alleges that he himself removed the mattress on September 19, 2017. (Doc. 1-1, at PageID 15).

In his eighth claim, plaintiff asserts that, on September 18, 2017, while in segregation, he complained to Captain Clark and Lt. Dyer, who are not named as defendants in the case, about his dislocated arm and indicated that placement in single handcuffs caused him pain. (Doc. 1-1, at PageID 15). He apparently indicated to Clark and Dyer that there should be a "double handcuff order" in his file. (Doc. 1-1, at PageID 15). Dyer purportedly explained that a double-handcuff order would have to go through the Major at SOCF and not medical. (Doc. 1-1, at PageID 15). Plaintiff alleges that defendant McCroskey was "present for this conversation at the crash gate," but "tightened and squeez[ed] [plaintiff's] handcuffs making it impossible for [plaintiff] to bare the pain," while plaintiff awaited an R.I.B. hearing. (Doc. 1-1, at PageID 15).

Plaintiff further alleges that he had requested that the "charging official" be present at the R.I.B hearing. (Doc. 1-1, at PageID 15). The R.I.B. hearing was apparently continued

7

until September 26, 2017, but defendant McCroskey allegedly told plaintiff that "he could not have the charging official and that [plaintiff] could rot in segregation." (Doc. 1-1, at PageID 15). Plaintiff claims that "he was granted five days [sic] time served, when [he] had been in segregation for a total of nine da[ys]." (Doc. 1-1, at Page ID 15). He further asserts that "[a]lthough on 9/26/2017 [he] was granted release from [the] Rules Infraction Board, [he] was never released from segregation." (Doc. 1-1, at PageID 16).

Plaintiff asserts that, on September 28, 2017, "he was being taken to the institution infirmary leg shackled and handcuffed behind [his] back, when [defendant] Captain Harold Bell snatched [plaintiff], hurting [plaintiff's] left shoulder." (Doc. 1-1, at PageID 16). Plaintiff alleges that defendant Rodgers "then yanked [plaintiff's] arm while squeezing [plaintiff's] hand . . . and twisting [plaintiff's] hand while cuffed damaging [plaintiff's] nerve in his hands." (Doc. 1-1, at PageID 16). "To add insult to injury," plaintiff asserts, Bell issued him a conduct report "for threats, [d]isobeying a direct order and disrespect." (Doc. 1-1, at PageID 16). According to Johnson, no one read him the conduct report, he was not present for the disciplinary hearing, and "no appeal process was given." (Doc. 1-1, at PageID 16). He alleges that the institution inspector[3] "falsely stated" that plaintiff "had refused . . . the hearing and appeal." (Doc. 1-1, at PageID 16). As a result of the conduct report, plaintiff states that he "was placed in segregation for more than 40 days without any known conduct report." (Doc. 1-1, at PageID 16).

Claim nine of plaintiff's complaint appears to be a duplicate of claim seven. (*See* Doc. 1-1, at PageID 16). However, plaintiff adds allegations that "he was not given any cleaning supplies . . . [and] had to use personal clothing and soap given in the packup to clean the

---

[3]For the purposes of this Report and Recommendation, the undersigned assumes that plaintiff's reference to "institutional inspector" in Claim Eight is a reference to defendant Mahlman.

8

mess." (Doc. 1-1, at PageID 16). He further claims that he requested to be moved, but "remained in cell J2-37 for 40 days." (Doc. 1-1, at PageID 16).

In claim ten, plaintiff alleges that defendant Cool failed to investigate plaintiff's complaints about the alleged lack of a hearing and appeal on his September 28, 2017, conduct report. (Doc. 1-1, at PageID 16).

In his eleventh claim, plaintiff alleges that defendant Greene "knowingly denied [plaintiff] Appeal relief." (Doc. 1-1, at PageID 17). Plaintiff asserts that he "has appealed every issue to Larry Greene in regards to false accusations made by officers that can be proven and insisting that there is visible DVR available to review each and every claim." (Doc. 1-1, at PageID 17). Plaintiff asserts that "DRC policy gives the assistant warden ultimate power to have the last say, unless a[n] issue is serious and referred to the misconduct panel." (Doc. 1-1, at PageID 17).

In his twelfth claim, plaintiff alleges that defendant "Major Warren had delayed the informal complain[t] resolution, and to add insult to injury [plaintiff] had asked the Major how is it possible to be released from segregation but never released." (Doc. 1-1, at PageID 17). Plaintiff alleges that Warren "refused to give an answer and failed to provide adequate supervision on the issue." (Doc. 1-1, at PageID 17).

In his thirteenth claim, plaintiff alleges that defendant Davis "was informed to each and every claim dealing with the assaults by staff members, threats, and even false classifications that her office failed to fix." (Doc. 1-1, at PageID 17). Plaintiff further alleges that he was transferred to SOCF from the Ohio State Penitentiary (OSP) "[in] August 2016 against his will." (Doc. 1-1, at PageID 17). He claims that he had no conduct reports at OSP and was not given any reasons for the transfer. (Doc. 1-1, at PageID 17). He claims that while other

inmate requests for transfer are granted, Davis "has failed to institution transfer [sic] [plaintiff]." (Doc. 1-1, at PageID 17). Plaintiff alleges that Davis "stated in a grievance disposition to Institution Inspector, Linnea Mahlman that Administration investigation [sic] was going on in regards to a[n] out dated conduct report that kept [plaintiff] in Segregation for 40 days from 9/17/17 – 10/27/17[,] [t]hen from 10/27/17 till 12/5/2017," but nevertheless "stated no separations can be placed by inmates from officers." (Doc. 1-1, at PageID 17).

In his fourteenth claim, plaintiff alleges that the Warden placed plaintiff's name in "over 80 conduct reports dealing with gang and riot at SOCF, when [plaintiff] was placed in segregation before these events happened." (Doc. 1-1, at PageID 17). He further claims that was "held in segregation 40 days then read a conduct report on November 29, 2017 after [plaintiff] was placed in segregation October 27, 2017." (Doc. 1-1, at PageID 17). Plaintiff claims that he "was not given his right to have the charging official at the hearing and was granted 20 days [sic] time served when he spent 40 days." (Doc. 1-1, at PageId17).

As relief, plaintiff seeks monetary damages and injunctive relief. (Doc. 1-1, at PageID 18).

### C.     Analysis

Liberally construed, plaintiff's complaint states a conditions-of-confinement claim against defendant Lt. Eaches under the Eighth Amendment (claims seven and nine) and an excessive-force claim against defendants D. McCroskey, Harold Bell, and Lt. Rodgers (claim eight) under the Eighth Amendment. At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that these claims are deserving of further development and may proceed at this juncture. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). However, plaintiff's remaining claims should be dismissed for failure to state a

claim upon which relief may be granted.

As an initial matter, plaintiff's complaint contains no allegations against defendant Walter Sammons. As plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior, *see Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012), dismissal of defendant Sammons is warranted.

Next, plaintiff's claims against the remaining individual defendants in their official capacities must be dismissed to the extent that plaintiff seeks monetary damages. An action against a state official in his or her official capacity is the equivalent of an action against the State he or she represents. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989). Therefore, all the individual defendants in their official capacities are immune from suit to the extent that plaintiff seeks monetary damages.

Plaintiff's claims should also be dismissed against the Warden and any other defendant plaintiff seeks to sue under a *respondeat superior* theory. It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g.*, *Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Polk Cty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir.

2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Therefore, plaintiff's claims should be dismissed against any defendant that plaintiff seeks to hold liable under a *respondeat superior* theory.

Plaintiff's claims relating to the alleged March 1, 2017, strip search and urinalysis should be dismissed. As noted above, to state a § 1983 claim, plaintiff must allege personal involvement on the part of the defendants. *See Rizzo*, 423 U.S. at 371; *Heyerman*, 680 F.3d at 647. Plaintiff does not allege that any of the named defendants participated in the alleged strip search or urinalysis testing. Dismissal of plaintiff's strip-search and urinalysis claims is therefore warranted.

To the extent that plaintiff contends that he was denied due process in the prosecution and outcome of his March 10, 2017, disciplinary hearing following the urinalysis, neither plaintiff's placement for nine days in restrictive housing while awaiting his R.I.B. hearing nor his resulting disciplinary sanction implicated due process concerns under the Fourteenth Amendment.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship

implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, plaintiff has not alleged that his disciplinary sanction based on his positive drug test resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Neither the alleged denial of library access for ninety days nor the alleged loss of recreational privileges for sixty days implicates due process concerns under *Sandin*. *See Park v. Morgan*, No. 1:15-cv-182, 2015 WL 1637168 (S.D. Ohio Apr. 10, 2015) (findings that imposition of 60-day recreational restriction did not implicate Fourteenth Amendment) (citing cases); *c.f., Ward v. Thompson,* No. 1:13-cv-580, 2015 WL 3948190 (W.D. Mich. June 29, 2015) (finding no property or liberty interest in access to the law library).

For these reasons, plaintiff's challenges to the disciplinary proceedings on September 18 and 26, 2017, and the disciplinary proceedings that he claims resulted from his September 28, 2017, conduct violation, which are at issue in claim eight, also fail to state a claim upon which

relief may be granted and are subject to dismissal.[4] The due process violations at issue in claim fourteen fail to state a claim upon which relief may be granted for the same reasons.

Plaintiff's second claim should be dismissed. As noted above, neither the denial of access to the prison law library for ninety days nor the denial of recreational privileges for sixty days implicates the Fourteenth Amendment. The alleged restriction on law library access also does not violate the Eighth Amendment. *See Lewis v. Casey*, 518 U.S. 343, 350-51 (1996) (finding that prisoners have no constitutionally protected right of access to a law library); *c.f., May v. Baldwin*, 895 F. Supp. 1398, 1405 (D. Ore. 1995) ("Contrary to plaintiff's allegations, it is not a violation of the Eighth Amendment to deny a prisoner access to a prison library."). Moreover, although plaintiff alleges that he was denied recreational privileges outside of his cell, he has not alleged sufficient facts to suggest a complete deprivation of exercise opportunities. *See, e.g.*, *Lichtenwalter v. Maier*, No. 5:14-cv-218, 2014 WL 3749126, at *7 (N.D. Ohio July 29, 2014) (dismissing at screening stage plaintiff's claim that denial of exercise opportunities violated the Eighth Amendment).[5] For the reasons stated below in addressing plaintiff's fourth claim, the alleged denial of access to the law library also fails to implicate the First Amendment.

As for plaintiff's claims that he was held in segregation longer than other inmates, plaintiff has failed to allege a discriminatory purpose for holding him in segregation and, thus, has failed to state an equal protection claim. *See Bray v. Alexandria Women's Health Clinic*, 506

---

[4]To the extent that plaintiff alleges in claim eight that he "was never released from segregation," (Doc. 1-1, at PageID 16), a complaint does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557. Here, plaintiff's allegation that he was "never released from segregation," is inconsistent with his later allegation that he was "in Segregation for 40 days from 9/17/17-10/27/17[,] [t]hen from 10/27/17 till 12/5/2017." (Doc. 1-1, at PageID 17). Assuming the truth of plaintiff's allegations that he remained in segregation from September 17, 2017, until December 5, 2017, this approximately three-month period in segregation does not implicate due process concerns. *See, e.g., Clifford v. Mich. Dep't of Corr.*, No. 1:17-cv-556, 2017 WL 3599576, at *5 (W.D. Mich. Aug. 22. 2017) (finding that the plaintiff's six-month stay in segregation did not implicate due process) (citing cases).

[5]In *Lichtenwalter*, the court dismissed the plaintiff's Eight Amendment denial-of-exercise claim because, as in this case, the alleged facts did not suggest a complete deprivation of exercise opportunities, such as "'running in place, doing push-ups, sit-ups, or other exercises in his jail cell.'" *See Lichtenwalter*, 2014 WL 3749126, at *7 (quoting *Deleon v. Hamilton Cty. Sheriff's Dept.*, No. 1:12-cv-68, 2012 WL 3116280, at *11 (E.D. Tenn. July 31, 2012)).

U.S. 263, 271-72 (1993). "Discriminatory purpose . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (quoting *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Further, plaintiff's sparse allegations in claim two are too conclusory to state a First Amendment retaliation claim. *Twombly*, 550 U.S. at 557.

Plaintiff's third claim should be dismissed because his allegations that defendant Mahlman and the "Administration" at SOCF displayed racial hostility toward African American inmates are wholly conclusory and unsupported by specific facts. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. 1994). Moreover, plaintiff's claim that Mahlman interfered with his right to file grievances should be dismissed because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug. 03, 1998) (citations omitted).

Plaintiff's fourth claim should be dismissed because plaintiff has not established a claim for the denial of access to the courts under the First Amendment. When an inmate alleges his access to the courts was denied because he was denied access to the prison library or certain books, he fails to state a claim for relief absent any showing of prejudice to this litigation. *Lewis*, 518 U.S. at 351; *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."

*Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

The Supreme Court has held that, in bringing a denial of access-to-courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In addition, "the predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416. In other words, "only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action." *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) (citing *Lewis*, 518 U.S. at 353 & n.3).

Plaintiff fails to allege any facts showing that he suffered an actual injury as a result of the alleged denial of access to the law library for ninety days. Although he states that he had two open cases, his conclusory statement that "[t]he no law library has made me not be able to meet a required deadline in rebuttal to the State" (Doc. 1-1, at PageID 12), does not contain facts from which this Court can infer that a nonfrivolous claim has been hampered.[6]

Plaintiff's fifth claim should be dismissed. Plaintiff does not specifically allege how any of the named defendants were involved in tampering with his mail. *See Rizzo*, 423 U.S. at 371; *Heyerman*, 680 F.3d at 647. Further, an isolated incidence of alleged interference with an inmate's mail is generally insufficient to state a constitutional claim. *See Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("Such a random and isolated incident [of alleged interference with the plaintiff's mail] is insufficient to establish a constitutional violation."); *Sallier v. Brooks*,

---

[6]To the extent that plaintiff asks the Court to see "Case L-17-2014" (Doc. 1-1, at PageID 12), an Ohio Court of Appeals decision with that case number reflects that the state trial court denied plaintiff's Rule 60(B) motion, after construing it as a motion for post-conviction relief, as untimely in December 2016. This is *prior* to the alleged denial of law library access, which plaintiff alleges started in March 2017. *See State v. Johnson*, No. L-17-1014, 2017 WL 3381949, at *1 (Ohio App. Aug. 4, 2017).

343 F.3d 868, 874 (6th Cir. 2003) ("Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights."). Plaintiff does not allege that he was harmed by his alleged delay in receiving the returned mail or that he was not able to later mail it.

Because plaintiff's first five claims are subject to dismissal, his sixth claim, which restates his first five claims, is also subject to dismissal.

Plaintiff's allegations in claim seven that defendant Eaches threatened him should be dismissed. Harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."). For this reason, defendant McCroskey's alleged statement in claim eight that plaintiff "could rot in segregation" (Doc. 1-1, at PageID 15) also fails to state a claim upon which relief may be granted.

Claims ten, eleven, twelve, and thirteen in plaintiff's complaint should be dismissed. In these claims, plaintiff challenges the denial of administrative grievances and the failure of various prison officials to investigate his claims. As set forth above, "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller*, 1998 WL 476247, at *1. Further, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.").

17

## IT IS THEREFORE RECOMMENDED THAT:

The complaint (Doc. 1-1) be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of plaintiff's Eighth Amendment individual capacity conditions-of-confinement claim asserted against defendant Eaches and Eighth Amendment individual capacity excessive-force claim asserted against defendants McCroskey, Bell, and Rodgers.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff serve a summons and copy of the complaint on defendants Eaches, McCroskey, Bell, and Rodgers. Because plaintiff paid the filing fee in this matter and is not proceeding *in forma pauperis*, he is responsible for serving the complaint on defendants Eaches, McCroskey, Bell, and Rodgers in compliance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4. Failure to comply with the terms of this order shall result in a report and recommendation to the District Court that plaintiff's claims against defendants Eaches, McCroskey, Bell, and Rodgers be dismissed for lack of service. Any questions regarding service should be directed to the Clerk of Court.

2. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to s or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

3. Because plaintiff has paid the required fee (Doc. 5 (noting receipt of payment)), his

motion to proceed *in forma pauperis* (Doc. 1) is **DENIED as moot**.

    4. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

        *s/ Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| TYRONE R. JOHNSON,<br>    Plaintiff, | Case No. 1:18-cv-43 |
| vs. | Black, J.<br>Bowman, M.J. |
| MICHAEL HUMPHREY, *et al.*,<br>    Defendants. | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).